(173 App. Div. 657)

### BACHER v. G. P. PUTNAM'S SONS.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. MASTER AND SERVANT ⚖➡276(3)—INJURIES TO SERVANT—EVIDENCE.
    Evidence *held* to show that the accident in which plaintiff servant was injured resulted, not from a shaky condition of a wagon, of which he had complained to his foreman, but from accidental breaking of a king-bolt by his driving into a trench at high speed.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ⚖➡276(3).]

2. MASTER AND SERVANT ⚖➡123—INJURIES TO SERVANT—NEGLIGENCE—LIABILITY.
    Where servant alleged injuries due to generally defective condition of wagon, and the master's evidence tended to show that the accident resulted from breaking a kingbolt by driving at too great speed into a trench, the master was not liable for a defect in the kingbolt not discoverable by ordinary inspection, even if the wagon was otherwise defective.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 233, 234; Dec. Dig. ⚖➡123.]

3. MASTER AND SERVANT ⚖➡293(7) — INJURIES TO SERVANT — NEGLIGENCE — LIABILITY.
    An instruction that the mere fact that the wagon driven by the servant gave way, if under ordinary use, with reasonable care and prudence on the servant's part, would warrant the inference that it was not capable of the work intended for it, was error, as leaving to the jury to find negligence from mere happening of the accident.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1150; Dec. Dig. ⚖➡293(7).]

Appeal from Trial Term, New York County.

Action by George Bacher against G. P. Putnam's Sons. From a judgment for plaintiff, and an order denying motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

E. Clyde Sherwood, of New York City, for appellant.
Henry K. Golenbock, of New York City, for respondent.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, J.   The plaintiff recovered a judgment against the defendant for $2,000 damages for personal injuries sustained by him while in the employ of the defendant as a driver of a delivery wagon.   The complaint alleges, in effect, that plaintiff was working for the defendant as a driver; that it was the duty of the defendant to furnish plaintiff with a reasonably safe wagon; that by direction of the defendant he drove a certain horse and wagon in and about the defendant's business, relying upon the assurance of the defendant that the wagon was reasonably safe; that the said wagon, to the knowledge of the defendant, was unsafe and broken, or that said unsafe condition could have been discovered by proper inspection; that while driving said wagon on Park avenue, near Sixty-Eighth street, the wagon broke down by reason of its weak and defective condition, causing serious injuries to the plaintiff, which he enumerates in detail; and that the accident happened solely through the negligence of the defendant.   In his bill of particulars plaintiff states:

"That the wagon was insecure, broken, unsafe, and dilapidated to the extent that the front flooring was loose, shaky, and insecure, and, that the fifth wheel of said wagon was not safely secured and properly adjusted and that the body of the wagon was not properly or safely fastened to the spring, and the holes of the rivets were enlarged and otherwise loosened."

The wagon in question belonged to a liveryman named Goodheim, and was hired by the defendant for delivering parcels in the business of the defendant, which was the publishing and selling of books.

The plaintiff testified that he had been using the wagon in question for about two weeks, going to the livery stable each day to get it, and bringing it back each night; that he did this by order of the superintendent of the defendant; that about four days before the accident occurred he told the superintendent that the wagon was shaky, and that on the day of the accident, before it occurred, he told the superintendent that he thought it was the same wagon that he had been talking about before, and that it was "kind of shaky," and that the superintendent said, "It is all right."   He further testified that on the day of the accident, between 9 and 10 a. m., he was driving up Park avenue at Sixty-Eighth street at about 3½ miles an hour with a light load; that he drove across a sort of trench in the roadway, which had been left there by the Edison Company; that the front wheels went into the trench, and immediately separated from the rest of the wagon; that the front part of the wagon went down to the ground, throwing him forward, and that his helper fell on top of him; that the trench was about 2 inches deep and 2 feet wide; that this trench extended through Sixty-Eighth street, from Lexington avenue to Madison avenue; that he knew of its existence on the day in question having driven there before.

[1]  The plaintiff gave no further testimony, either as to the condition of the wagon or as to the nature of the accident.   He rested his case after the introduction of some medical testimony as to the nature of his injuries, and the defendant moved to dismiss the complaint upon the ground that there was no negligence shown on the part of the defendant which in any way brought about the accident, and that

the evidence showed that the plaintiff himself was guilty of contributory negligence. This motion might well have been granted, as nothing appears in the evidence to show that the wagon was apparently defective, or that it had any defects of construction or condition which could have been discovered by the exercise of ordinary care. The motion, however, was denied, and the defendant proceeded to call witnesses to show how the accident happened, and to show that reasonable care had been exercised by the defendant to furnish to the plaintiff a safe vehicle.

The defendant first called John Siemering, who at the time of the accident was in the employ of the defendant and was upon the wagon driven by the plaintiff. He testified that the wagon broke in half; the kingbolt giving way, causing the separation of the fifth wheel. This witness denied the plaintiff's statement that he was thrown on top of the plaintiff, and stated that he retained his place on the seat during the accident, and that neither he nor the seat fell upon the plaintiff. He further testified that the cut into which the vehicle went was situated at the south side of Park avenue; that it was 2 feet wide and 10 inches deep, and that he knew of the trench before the day of the accident; that the plaintiff, as he approached the trench, was driving the horse on a trot; that on the morning they started out he saw nothing the matter with the wagon.

The defendant then called Louis Goodheim, the proprietor of the livery stable, who stated that he rented the horse and wagon to the defendant at various times. He was asked if he saw the wagon on the day of the accident when it left his stable, and whether it was in good condition. The court sustained an objection to this question, and various other proper questions, which were evidently intended to show that the wagon, when it left Goodheim's stable, so far as ordinary inspection went, was in a safe and sound condition. This witness was allowed to state, however, that four weeks before the day of the accident he had sent the wagon to a repair shop kept by a Mr. Simpson, who was a wagon maker; that he saw the wagon when it came back from the repair shop, and examined it carefully; that he looked around it, tested the wheels and shafts and top, to see whether Simpson had fixed it; that he got hold of the wheels and shook the spokes, went all around it and under it, and looked it over. When asked if he made any tests in regard to the wheels, the court sustained an objection, and he was not allowed to answer. Upon cross-examination he was asked if he examined every wagon, and he said he did.

Alfred Simpson, the wagon maker, was then called, and he recalled the time when the wagon was brought to the shop for repairs; that he set the tires, put a new spring block in and set one axle on, putting some new clips on, setting the four tires and draughting wheels; that before he sent it back to Goodheim he inspected the wagon, looking over the wheels, to see if the tires had been set after the axles were all right, and if the spring block had been put in as ordered, and the clips and other repairs made. He also testified that he examined all the nuts, and tested them to see if they were tightened. He was then asked if he did anything with reference to the fifth wheel. An objec-

tion made to this question was sustained, and he was not allowed to answer. This question was a proper one, and it was error to exclude the answer.

The defendant then called John F. Weippert, who testified he was in the employ of the defendant as shipping clerk; that he went to the place of the accident, and arrived there about half past 10 in the morning; that he saw the excavation into which the front wheels of the wagon had been drawn; that it was 10 inches deep and 2 feet wide, and extended across Park avenue at Sixty-Eighth street.

T. J. Crimmins was then called, and testified that he was a driver in the employ of the defendant; that he went to the scene of the accident on the day in question, and saw the hole at Sixty-Eighth street; and that it was about 2 feet wide and 10 inches deep.

The defendant then called Officer Jenkins, a member of the police force, who stated that he arrived at the scene of the accident a few minutes after it occurred; that he saw the cut into which the front wheels of the wagon went, and that it was about 3 feet wide and from 8 to 10 inches deep; that he looked at the wagon to see what caused the accident, and he examined the fifth wheel and saw that the kingbolt on the fifth wheel was broken; that half of the bolt was sticking in the fifth wheel—i. e., where the shaft was—and the other half was on the upper end of it; that the bolt broke in half, and it was about 2 inches in diameter, and that the broken parts seemed to be even; that the bolt was cut right in half.

Joseph A. Aston was then called by the defendant, and testified that he was a manager for the defendant; that he had sent the plaintiff for the horse and wagon, and had instructed Goodheim to have the horse and wagon ready for him. This witness denied that the plaintiff ever said to him that the wagon was shaky and not in good condition, and testified that the plaintiff never made any complaint to him of any kind with reference to the condition of the wagon before the accident.

After the admission of some medical evidence as to the condition of the plaintiff, the defendant renewed its motion to dismiss the complaint, on the ground that there was no evidence of any negligence on the part of the defendant, and on the ground that the plaintiff brought about the accident through his own negligence. This motion was denied. We think it ought to have been granted. It is quite clear from this evidence that the shaky condition of the wagon, if it was shaky, had nothing to do with the accident. The accident was doubtless caused by the breaking of the kingbolt, caused by the unusual strain upon it as the result of driving into the trench at too great a speed.

[2] The defendant asked the court to charge:

"That if the defect in the kingbolt, so called, was a latent one or a hidden defect, which could not have been discovered by an ordinary inspection, the defendant is not liable for such a defect."

In answer to this request the court said:

"I will not charge in the language requested, because on this evidence it is within the power of the jury to find, if they feel inclined to do so, that the wagon was defective outside of that."

We .think this request was proper, and should have been granted, and that the court's statement that it was "within the power of the jury to find, if they feel inclined to do so, that the wagon was defective outside of that," was erroneous, as there was no evidence of any other defect in the condition of the wagon which had any relation to the accident. But, even if there was evidence that the wagon was defective outside of the kingbolt, the request was nevertheless proper, because the defendant confined the request to a possible defect existing in the kingbolt, and asked the court to say to the jury that the defendant was not responsible for that particular defect, if it was one not discoverable by ordinary inspection.

[3] The court also charged the jury as follows:

"But the mere fact of the wagon giving way, if under ordinary use, with reasonable care and prudence on the part of the driver, would be sufficient for the jury to infer that the wagon was not capable of performing the work intended for it."

The defendant took an exception to this part of the court's charge. We think the exception was a good one, and that the charge was error, as it evidently left to the jury the right to find negligence of the defendant from the mere happening of the accident.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.